SEALED

FILED

# UNITED STATES DISTRICT COURT
## WESTERN DISTRICT OF TEXAS 2015 OC -7 PM 1:15
### DEL RIO DIVISION

WESTERN DISTRICT OF TEXAS
U.S. CLERK'S OFFICE

BY: _____
DEPUTY

| | |
|---|---|
| UNITED STATES OF AMERICA | § Cause No.: |
| | § |
| v. | § **INDICTMENT** |
| | § |
| PETE PEREZ a/k/a "Jerry" a/k/a "Xkape" (1) | § [VIO: COUNT ONE: 18 U.S.C. § 1962(d), |
| MICHAEL RAY ARRIAGA a/k/a "Fez" (2) | § Conspiracy to Conduct the Affairs of an |
| BILLY RAMIREZ a/k/a "Rascal" (3) | § Enterprise Through a Pattern of |
| JAMES MARTY LONG a/k/a "Whiteboy" a/k/a | § Racketeering; COUNT TWO: 21 U.S.C. § |
| "Jimmy" (4) | § 841(a)(1) & (b)(1)(B) and 846, Conspiracy |
| MARCO ANTONIO MARTINEZ a/k/a "Cartel" | § to Possess With Intent to Distribute Cocaine; |
| a/k/a "Cartelly" a/k/a "Telly" (5) | § COUNT THREE: 21 U.S.C. § 841(a)(1) & |
| ADRIAN SILVA a/k/a "Trouble" (6) | § (b)(1)(A) and 846, Conspiracy to Possess |
| JOE PIERCE a/k/a "Dro" (7) | § With Intent to Distribute Methamphetamine] |
| JORGE AGUERO a/k/a "Fat Rat" a/k/a "G" (8) | § |
| EDMUNDO HILL a/k/a "Dox" (9) | § |
| GREGORY HILL a/k/a "Chaotic" a/k/a "G Hill" | § |
| (10) | § |
| RODOLFO RODRIGUEZ a/k/a "Pun" a/k/a | § |
| "Sweets" (11) | § |
| CRYSTAL PIERCE a/k/a "Shorty" (12) | § |
| JACOB MARISCAL a/k/a "Righteous" (13) | § |
| MICHAEL ANTHONY HILL a/k/a "Chip" (14) | § |
| JAKE MENDOZA a/k/a "Thug" (15) | § |
| JOSE RIOS a/k/a "Creeper" (16) | § |
| JOHN ANDREW SILVA a/k/a "Chucho" (17) | § |
| ABRAM URBINA a/k/a "Tank" (18) | § |
| ESMEREJILDO BALDERAS a/k/a "Hildo" (19) | § |
| GEORGE ANTHONY GARZA a/k/a "Tone" (20) | § |
| ALFREDO MARTINEZ a/k/a "Goofy" (21) | § |
| GONZALO NANDIN a/k/a "Too Short" (22) | § |
| MANUEL ROSARIO-PEREZ a/k/a "Yayo" (23) | § |

# DR15CR1211

## COUNT ONE
### [18 U.S.C. § 1962(d)]

1.      At various times relevant to this Indictment, the following defendants, and others

known and unknown, were members or associates of the "Almighty LATIN KING and Queen

Nation" gang (hereinafter the "LATIN KINGS"), a criminal organization whose members and

associates engaged in acts of violence, including attempted murder, assault with a dangerous

weapon, assault, extortion, robbery, various firearms offenses, and narcotics distribution, and

which operated in the Western District of Texas, and elsewhere:

PETE PEREZ a/k/a "Jerry" a/k/a "Xkape" (1)
MICHAEL RAY ARRIAGA a/k/a "Fez" (2)
BILLY RAMIREZ a/k/a "Rascal" (3)
JAMES MARTY LONG a/k/a "Whiteboy" a/k/a "Jimmy" (4)
MARCO ANTONIO MARTINEZ a/k/a "Cartel" a/k/a "Cartelly" a/k/a "Telly" (5)
ADRIAN SILVA a/k/a "Trouble" (6)
JOE PIERCE a/k/a "Dro" (7)
JORGE AGUERO a/k/a "Fat Rat" a/k/a "G" (8)
EDMUNDO HILL a/k/a "Dox" (9)
GREGORY HILL a/k/a "Chaotic" a/k/a "G Hill" (10)
RODOLFO RODRIGUEZ a/k/a "Pun" a/k/a "Sweets" (11)
CRYSTAL PIERCE a/k/a "Shorty" (12)
JACOB MARISCAL a/k/a "Righteous" (13)
MICHAEL ANTHONY HILL a/k/a "Chip" (14)
JAKE MENDOZA a/k/a "Thug" (15)
JOSE RIOS a/k/a "Creeper" (16)
JOHN ANDREW SILVA a/k/a "Chuco" (17)
ABRAM URBINA a/k/a "Tank" (18)
ESMEREJILDO BALDERAS a/k/a "Hildo" (19)
GEORGE ANTHONY GARZA a/k/a "Tone" (20)
ALFREDO MARTINEZ (21)
GONZALO NANDIN a/k/a "Too Short" (22)
MANUEL ROSARIO-PEREZ a/k/a "Yayo" (23)

### STRUCTURE OF THE ENTERPRISE

2.      The structure of the LATIN KINGS included, but was not limited to, the following:

a.      The LATIN KINGS are a violent street gang with thousands of members across

the United States and overseas;

b.      The traditional power centers of the LATIN KINGS, and members of the gang's national leadership structure, are predominantly located in the Chicago (known as "KMC" or the "Motherland") and New York (referred to as the "Bloodline") metropolitan areas.

c.      The LATIN KINGS have a detailed and uniform organizational structure, which is outlined – along with various "prayers," codes of behavior, and rituals – in a written "manifesto" widely distributed to members throughout the country, including, but not limited to, Texas.

d.      The Chicago area LATIN KINGS is divided by the North and South Sides of Chicago, each lead by the "Corona," the highest ranking LATIN KING member. Both Coronas report to the overall LATIN KING leader, currently incarcerated and serving a life sentence in a federal prison.  The LATIN KINGS are further organized by geographic locations into "Regions."  Generally, each Region has a rank structure that includes a "Regional Inca," a "Regional Cacique," and one or more "Regional Enforcers."  The Regional Inca is the highest authority within the Region.   The Regional Cacique is second-in-command of the Region.   The Regional Enforcers serve to support the Regional Inca and enforce discipline of and adherence to established LATIN KING rules and by-laws, as well as enforce the orders of LATIN KING leaders.  The Regional Officers report to the "State Representative," who is the highest authority in the state in which the Region sits and reports directly to the "Motherland" (Chicago).

e.      Each Region is comprised of "Branches," "Chapters," or "Sections," hereinafter referred to as "Chapters."  Each chapter is typically named after a street or streets that run through the chapter.  In the case of larger Regions, such as the LATIN KINGS in the State of Texas, the chapter would be named after the town where the chapter was located.  Each chapter has its own rank structure, including a leader or "Inca," a second in command or "Cacique," and

one or more "Enforcers," all of whom were in charge of the non-ranking gang members or "Soldiers" within the chapter. Incarcerated LATIN KING members also follow this system, with ranking jailhouse members in each facility.

      f.     The LATIN KINGS in the State of Texas are divided into four Regions: South, West, Central, and North. Each Region in the State of Texas is comprised of several chapters. The Central Region is comprised of three Chapters: Austin, San Antonio, Uvalde and the surrounding areas. The Central Region is commanded by the LATIN KING leadership located in Austin. Further, the Regional Officers for the Central Region will communicate with the Regional Officers of the South, West, and North Regional Officers and assist each other when needed.

      g.     The ranking officers of each Chapter in the Central Region meet with the Regional Officers from Austin once every quarter. The Uvalde Chapter of the Central Region normally meets every two weeks on Sundays. These meetings may be called "juntas," "ball games," "360" or "church." This is also when members of the Uvalde Chapter are required to pay dues. Meetings between LATIN KING members may occur more frequently when members have time-sensitive gang business to discuss.

      h.     All LATIN KING members are expect to commit acts of violence to maintain membership and discipline within the gang, including violence against rival gang members (or those perceived to be rival gang members), as well as members and associates of the LATIN KINGS who violated the gang's rules. LATIN KING members are also expected to participate in assaults to initiate prospects into, or expel members/prospects from, the gang.

      i.     LATIN KING ranking members have the authority within the gang to order other subordinate members to complete tasks or assignments that would serve a purpose for the

LATIN KINGS. These tasks could range from a leader ordering a "B.O.S." (beat down on sight) or S.O.S. (smash on sight), meaning the assault of a rival gang member or a LATIN KING member who had committed a violation of the LATIN KING rules, to a "green light" or "K.O.S." (kill on sight), meaning the murder of a rival gang member or of a LATIN KING member who may have committed an egregious violation of the gang's rules. Failure to perform such a task may result in the assigned member being in violation of the rules and being punished accordingly. Punishment for failing to comply with an order could range anywhere from a beating to death.

j.      LATIN KING leaders also have the authority to mete out "violations" or punishment for failing to abide by the rules or code of the LATIN KINGS, such as the use of a prohibited substance or failure to pay dues. For example, failure to pay dues may result in a violation of "2 for 45," which entails two (2) LATIN KING members assaulting the individual for forty-five (45) seconds. The sharing of sensitive gang-related information may result in a "full body fledge," which consists of the violator standing against a wall while other LATIN KING members assault that individual all over his body except his face for two (2) minutes and thirty (30) seconds. The duration and substance of the violation will depend on the seriousness of the conduct. A more egregious violation may result in the killing of that LATIN KING member.

k.      Typically, more serious tasks – such as the decision to order a retaliatory shooting – will fall within the discretion of the Regional Officers. A Chapter's Inca will bring such a decision to the Regional Officers, who will relay their orders back to the Chapter's Inca. The Chapter's Inca will then relay the orders to the Chapter's Cacique, Enforcer(s), and other members. Decisions on matters of less significance – such as member violations – will generally fall to the Chapter's Inca. There are procedures for the Chapter's ranking members to overrule the Chapter Inca's decisions through involvement of the Regional Officers.

l.     Those seeking membership in the LATIN KINGS will first become a "prospect" for six (6) to twelve (12) months.   LATIN KING prospects are usually tasked with committing a variety of criminal acts.   Prospects may be required to take the blame for criminal acts and cannot implicate LATIN KING members in these criminal acts.   Prospects are required to complete an initiation process, often referred to as being "jumped in" during which time prospects are assaulted by other LATIN KING members.   Similarly, those who leave or are forced out of the gang face an assault and become "ex-ed out."

m.     LATIN KING members and prospects are required to adhere to a written "constitution" and "manifesto," outlining their organizational structure, various "prayers," codes of behavior, and rituals. This "manifesto" is widely distributed to members throughout the country.   Prospective LATIN KING members are required to memorize "knowledge" and attend "class" regarding the structure, rituals and behavioral codes of the LATIN KINGS before they can become full members.

n.     Members of the LATIN KINGS are also traditionally given "King Names" or "Queen Names," which are names other than their legal names and names by which they are known to members of the gang and to others on the street.   One of the purpose of having "King Names" or "Queen Names," is to obfuscate the identities of members from law enforcement.

o.     LATIN KING members communicate with members of their own chapter and members across the United States in person and through the use of telephone, e-mail and social networking sites.

p.     Members of the LATIN KINGS greet each other and show their membership in the gang by using a set of hand-gang signs, each intended to evoke the shape of a crown.   In addition, LATIN KINGS often greet one another, demonstrate their allegiance to the gang, or

simply announce their arrival or presence in a particular area, by exclaiming "ADR" or "Amor De Rey," which means "King's Love" in Spanish. Other phrases unique to the LATIN KING lexicon include "360," "ALKN," "ALKQN," "Crown," "Lion," "Lion Tribe," "Motherland," "KMC," "Kingism," and "Bloodline." The LATIN KINGS employ a robust symbology as well, often using depictions of five-pointed crowns, lions, and Inca- or Aztec-inspired artwork to demonstrate their affiliation. Members often have tattoos incorporating one or more of the aforementioned phrases or symbols, the crown and the lion being the most prominent. The gang also incorporates these phrases and symbols into graffiti, which they use to mark their territory or announce their presence in a particular area. The colors associated with the LATIN KINGS are black and gold, and members of the LATIN KINGS often demonstrate their affiliation with the LATIN KINGS by wearing clothing containing the colors black and gold, or incorporating some of the gang's other symbols or phrases.

q. LATIN KING members are expected to protect the name, reputation, and status of the gang from rival gang members and other persons. The LATIN KINGS require that all individuals show respect and deference to the gang and its membership. To protect the gang and enhance its reputation, LATIN KING members were expected to use any means necessary to enforce respect from those who show disrespect, including acts of intimidation and violence.

r. However, LATIN KINGS may also choose to come to agreements with the members of other gangs. The LATIN KING Central Region for the State of Texas came to an agreement with other gangs, to include the Mexican Mafia and the Texas Syndicate, allowing LATIN KING members to be exempt from paying taxes for selling drugs to certain people or in certain areas.

## THE RACKETEERING ENTERPRISE

3.     The LATIN KINGS, including its leadership, membership, and associates, constitute

an "enterprise," as defined in Title 18, United States Code, Section 1961(4) (hereinafter "the

enterprise"), that is, a group of individuals associated in fact.   The enterprise constituted an

ongoing organization whose members functioned as a continuing unit for a common purpose of

achieving the objectives of the enterprise.   This enterprise was engaged in, and its activities

affected, interstate and foreign commerce.

## PURPOSE OF THE ENTERPRISE

4.     The purposed of the enterprise included, but were not limited to, the following:

     a.     Enriching the leaders, members, and associates of the enterprise through,

among other things, the illegal trafficking of controlled substances;

     b.     Preserving and protecting the power, territory, operations, proceeds, and

prestige of the LATIN KINGS through the use of intimidation, threats of violence, violence,

extortion, and destruction of property;

     c.     Promoting and enhancing the LATIN KINGS and its members' and associates'

activities;

     d.     Keeping victims in fear of the LATIN KINGS and in fear of its leaders,

members, and associates through threats of violence and violence.   The leaders, members, and

associates of the enterprise undertook all steps necessary to prevent the detection of their criminal

activities, and sought to prevent and resolve the imposition of any criminal liabilities upon their

leaders, members, and associates, by the use of violence, and intimidation directed against

witnesses, victims, and others.   As part of this practice, the enterprise enforced what it referred to

as an "SOS" or shoot on sight order, or also known as "KOS" or, kill on sight, sometimes known as

directly and indirectly, in the conduct of the affairs of the enterprise through a pattern of

racketeering activity, as defined in Title 18 of the United States Code, Sections 1962 (c), that is, to

conduct and participate, directly and indirectly, in the conduct of the affairs of the enterprise

through a pattern of racketeering activity, consisting of multiple acts of indictable under

a.    18 U.S.C. § 1951 (Extortion); and multiple acts involving:

b.    Murder, chargeable under Texas Penal Code, Sections 19.02, 7.02, 15.01 and
      15.02;

c.    Extortion, chargeable under Texas Penal Code, Sections 31.02, 31.03, 15.01,
      and 15.03.

d.    Robbery chargeable under Texas PenalCode,Sections 29.02, 29.03, 15.01,
      15.02, 15.03, 7.01, and 7.02; and

e.    Multiple offenses involving the possession with intent to distribute,
      distribution, and importation of controlled substances, including cocaine,
      marijuana, and methamphetamine, as well as conspiracy to commit the same, in
      violation of the laws of the United States [Title 21, United States Code,
      Sections 841, 843, 846,].

It was a part of the conspiracy that each defendant agreed that a conspirator would commit at least

two acts of racketeering activity in the conduct of the affairs of the enterprise.

## MANNER AND MEANS OF THE CONSPIRACY

7.    Members of the enterprise and their associates operated and conducted their affairs

through a series of laws and policies, some of which were codified in a constitution and a series of

laws.

MICHAEL ANTHONY HILL a/k/a "Chip" (14)
JAKE MENDOZA a/k/a "Thug" (15)
JOSE RIOS a/k/a "Creeper" (16)
JOHN ANDREW SIVA a/k/a "Chuco" (17)
ABRAM URBINA a/k/a "Tank" (18)
ESMEREJILDO BALDERAS a/k/a "Hildo" (19)
GEORGE ANTHONY GARZA a/k/a "Tone" (20)
ALFREDO MARTINEZ a/k/a "Goofy" (21)
GONZALO NANDIN a/k/a "Too Short" (22)
MANUEL ROSARIO-PEREZ a/k/a "Yayo" (23)

## THE RACKETEERING CONSPIRACY

6.    Beginning on or about, January 1, 2005 and continuing through to on or about the

date of this Indictment, in the Western district of Texas, the Defendants,

PETE PEREZ a/k/a "Jerry" a/k/a "Xkape" (1)
MICHAEL RAY ARRIAGA a/k/a "Fez" (2)
BILLY RAMIREZ a/k/a "Rascal" (3)
JAMES MARTY LONG a/k/a "Whiteboy" a/k/a "Jimmy" (4)
MARCO ANTONIO MARTINEZ a/k/a "Cartel" a/k/a "Cartelly" a/k/a "Telly" (5)
ADRIAN SILVA a/k/a "Trouble" (6)
JOE PIERCE a/k/a "Dro" (7)
JORGE AGUERO a/k/a "Fat Rat" a/k/a "G" (8)
EDMUNDO HILL a/k/a "Dox" (9)
GREGORY HILL a/k/a "Chaotic" a/k/a "G Hill" (10)
RODOLFO RODRIGUEZ a/k/a "Pun" a/k/a "Sweets" (11)
CRYSTAL PIERCE a/k/a "Shorty" (12)
JACOB MARISCAL a/k/a "Righteous" (13)
MICHAEL ANTHONY HILL a/k/a "Chip" (14)
JAKE MENDOZA a/k/a "Thug" (15)
JOSE RIOS a/k/a "Creeper" (16)
JOHN ANDREW SILVA a/k/a "Chuco" (17)
ABRAM URBINA a/k/a "Tank" (18)
ESMEREJILDO BALDERAS a/k/a "Hildo" (19)
GEORGE ANTHONY GARZA a/k/a "Tone" (20)
ALFREDO MARTINEZ a/k/a "Goofy" (21)
GONZALO NANDIN a/k/a "Too Short" (22)
MANUEL ROSARIO-PEREZ a/k/a "Yayo" (23)

each being a person employed by and associated with the LATIN KINGS, an enterprise engaged

in, and the activities of which affected, interstate and foreign commerce, and others known and

unknown to the Grand Jury, did knowingly and intentionally conspire to conduct and participate,

"green light," against LATIN KING members or others who were suspected of having cooperated with law enforcement;

      e.      Providing support to gang members who were charged with, or incarcerated for, gang-related activities; and

      f.      Preserving and protecting the LATIN KINGS and its leadership by keeping its members and associates from cooperating with law enforcement through intimidation, extortion, violence, threats of violence, and destruction of property.

## ROLES OF THE DEFENDANTS

5.    The Defendants participated in the operation and management of the enterprise as members and associates of the LATIN KINGS:

      a.      The following Defendants were or are leaders of the enterprise who at various times during the time period of the conspiracy directed other members of the enterprise in carrying out unlawful and other activities in furtherance of the enterprise's affairs:

PETE PEREZ a/k/a "Jerry" a/k/a "Xkape" (1)
MICHAEL RAY ARRIAGA a/k/a "Fez" (2)
BILLY RAMIREZ a/k/a "Rascal" (3)
JAMES MARTY LONG a/k/a "Whiteboy" a/k/a "Jimmy" (4)
MARCO ANTONIO MARTINEZ a/k/a "Cartel" a/k/a "Cartelly" a/k/a "Telly" (5)
ADRIAN SILVA a/k/a "Trouble" (6)
JOE PIERCE a/k/a "Dro" (7)
JORGE AGUERO a/k/a "Fat Rat" a/k/a "G" (8)
EDMUNDO HILL a/k/a "Dox" (9)
GREGORY HILL a/k/a "Chaotic" a/k/a "G Hill" (10)
RODOLFO RODRIGUEZ a/k/a "Pun" a/k/a "Sweets" (11)

      b.      Under the direction of the leaders of the enterprise, the following Defendants participated in the unlawful and other activities in furtherance of the conduct of the enterprise's affairs:

CRYSTAL PIERCE a/k/a "Shorty" (12)
JACOB MARISCAL a/k/a "Righteous" (13)

a.       The members of the enterprise and their associates attended regular meetings, at which they discussed, planned, and otherwise engaged in criminal activity, including attempted murder, assault with a dangerous weapon, assault, extortion, robbery, various firearms offenses, and narcotics distribution,

b.       Members of the enterprise and their associates initiated members through the practice of causing them to endure physical assaults conducted by members of the enterprise at various gang-related gatherings.

c.       To enforce discipline and the rules of the enterprise, members of the enterprise and their associates engaged in a system of "violations," in which the defendants and others attempted to murder, conspired to murder, and physically beat and threatened those members of the enterprise who violated rules, questioned authority, or posed a threat to the leaders or purposes of the enterprise.

d.       Members of the enterprise are prohibited from sharing gang information with persons outside the enterprise to ensure that federal and state law enforcement are prevented from bringing criminal cases or charges against the enterprise and/or its members and associates.

e.       Members of the enterprise and their associates employed and used gang-related terminology, symbols, gestures, and color schemes.

f.       To perpetuate the enterprise and to maintain and extend their power, members of the enterprise and their associates committed illegal acts including attempted murder, assault with a dangerous weapon, assault, extortion, and robbery, against individuals who posed a threat to the enterprise or jeopardized its operations, including rival gang members and witnesses to the illegal activities of the enterprise.   Pursuant to gang policy, members of the enterprise and their associates were required to participate in such acts, received standing orders to shoot rival gang

members, and were instructed to retaliate for gang related attacks upon the members and associates of the enterprise.

g.      Members of the enterprise and their associates managed the procurement, transfer, use, concealment, and disposal of firearms and dangerous weapons within the enterprise to protect gang-related territory, personnel, and operations, and to deter, eliminate, and retaliate against competitors and other rival criminal organizations and persons. Members typically referred to firearms collected and circulated in such manner "Nation" guns. Nation guns were guns owned by the LATIN KINGS and available for members and associates to use to conduct LATIN KING business.

h.      Members of the enterprise and their associates were required to jump in and/or assist other gang members who were involved in altercations or fights, to include undertaking retaliatory assaults, assaults with dangerous weapons, break-ins or other violent acts to ensure the standing and reputation of the enterprise was not diminished. If a member "stood idle" when required to assist, that member would be in violation of gang rules and subject to discipline.

i.      Members of the enterprise and their associates were required to stand guard at LATIN KING meetings. While standing guard, the members of the enterprise and their associates would utilize "Nation" guns to protect the meeting from rival gang members or law enforcement.

j.      Members of the enterprise and their associates earned money for their members and regularly financed their activities through funds obtained in the illegal trafficking of controlled substances, including the distribution and possession with intent cocaine, marijuana and methamphetamines.

k.      Members of the enterprise and their associates operated and conducted their affairs, in part, through a system in which the Chapter and Region leadership of the LATIN KINGS and others, possessed, controlled, and otherwise maintained a monetary stash on behalf of the enterprise.  As part of this practice, the members of the enterprise and their associates paid requisite monthly dues into the Box or "Caja" which, in turn, the enterprise used to bail gang members out of jail, to send money to incarcerated gang members and to purchase and sell firearms and controlled substances.  At times, the members of the enterprise and their associates paid dues by selling narcotics.

l.      Members of the enterprise and their associates, in accordance with LATIN KING rules, policies and orders, deceived, attempted to deceive and employed misrepresentation by taking the blame or admitting to crimes that were committed by other LATIN KING members or associates.

m.      Members of the enterprise and their associates hid, misrepresented, concealed, and caused to be misrepresented, concealed, and hidden, the objectives of acts done in furtherance of the conspiracy, and used coded language and other means to avoid detection and apprehension by law enforcement authorities.

n.      Members of the enterprise recruited and used juveniles to commit acts for the benefit of the enterprise.

## OVERT ACTS

8.      In furtherance of the conspiracy and to achieve the objects thereof, the conspirators performed or caused to be performed the following overt acts, among others, in the Western District of Texas and elsewhere:

a.     Beginning on or about January 1, 2005 and continuing through on or about the date of this Indictment, **PETE PEREZ, BILLY RAMIREZ, JAMES LONG, MARCO ANTONIO MARTINEZ, JOE PIERCE, JORGE AGUERO, EDMUNDO HILL, GREGORY HILL, RODOLFO RODRIGUEZ, CRYSTAL PIERCE, JACOB MARISCAL, MICHAEL HILL, JAKE MENDOZA, JOSE RIOS, JOHN ANDREW SILVA, ABRAM URBINA, ESMEREJILDO BALDERAS, GEORGE ANTHONY GARZA, ALFREDO MARTINEZ,** and other LATIN KING members and associates distributed marijuana, cocaine and methamphetamines.

b.     In or about 2005, **JOSE RIOS** and other LATIN KING members initiated a LATIN KING prospect, a person known to the Grand Jury, into the gang by assaulting him.

c.     In or about 2005, **MARCO MARTINEZ** and other LATIN KING members initiated a LATIN KING prospect, a person known to the Grand Jury, into the gang by beating him with their fists and feet.

d.     In or about 2005, **JAKE MENDOZA, GREGORY HILL,** and other LATIN KING members initiated a LATIN KING prospect, a person known to the Grand Jury, into the gang by beating him with their fists and feet.

e.     In or about 2005, LATIN KING members had a meeting and found that **JORGE AGUERO** had shared sensitive information about the gang with a non-LATIN KING member.

f.     In or about 2005, LATIN KING member **JORGE AGUERO** received a beating/violation from **GREGORY HILL, MARCO MARTINEZ,** and other LATIN KING members for leaking sensitive information to a non-LATIN KING member.

g.    In or about 2007, **JAMES LONG, JACOB MARISCAL**, and other LATIN KING members conducted a LATIN KING trial to discipline three (3) LATIN KING members, for violating LATIN KING rules by using a banned substance and other LATIN KING rules.

h.    In or about 2007, **JAMES LONG, JACOB MARISCAL**, and other LATIN KING members found two (2) of the accused LATIN KING members guilty of breaking LATIN KING rules. The accused LATIN KING members received a "head to toe" beating for five (5) minutes.

i.    In or about 2007, **BILLY RAMIREZ** sent a letter to a jail to inform the LATIN KING jailhouse Inca that a LATIN KING member had violated LATIN KING rules prior to being incarcerated and was no longer in good standing with the gang.

j.    On or about April 22, 2007, **JACOB MARISCAL** ordered other LATIN KING members and associates to break into the residence of rival gang members.

k.    On or about April 22, 2007, **GREGORY HILL, EDMUNDO HILL, MICHAEL HILL, JACOB MARISCAL, JAKE MENDOZA**, and other LATIN KING members and associates broke into the residence of and attacked rival gang members, J.G.C. and T.C.

l.    On or about April 17, 2008, **ADRIAN SILVA, ABRAM URBINA, ESMEREJILDO BALDERAS**, and other LATIN KING members and associates attacked a rival gang member, A.P., beating him in the head, face and body with deadly or dangerous weapons, including rocks, bats, and glass bottles.

m.    In or about 2009, **BILLY RAMIREZ** gave orders to **EDMUNDO HILL** and other LATIN KING members and associates to shoot rival gang members in retaliation for the stabbing of another LATIN KING member by the rival gang. **BILLY RAMIREZ** provided

fellow LATIN KING member **EDMUNDO HILL** with a firearm to conduct the retaliatory shooting.

n.      On or about January 4, 2009, **JORGE AGUERO** and **BILLY RAMIREZ** attempted to murder rival gang member D.R. by striking him in the head with a brick following a gang-related dispute. **RAMIREZ** brandished a shotgun during the assault and **RAMIREZ** stated "I am going to kill you" or words to that effect.

o.      On or about January 29, 2009, **BILLY RAMIREZ** ordered LATIN KING members and associates to kill rival gang members and provided a firearm to commit the murder.

p.      On or about January 29, 2009, following the orders of **BILLY RAMIREZ,** LATIN KING members **JOSE RIOS, JAKE MENDOZA,** and other LATIN KING members and associates attempted to murder rival gang members by shooting at persons standing in front of the residence of rival gang members, and into the occupied residence of the rival gang members in retaliation for vandalizing **JOSE RIOS'** vehicle.

q.      On or about July 10, 2009, **ABRAM URBINA** and other LATIN KING members engaged in a fistfight with rival gang members at a gas station in Uvalde, Texas. During the fight, LATIN KING member **ESMEREJILDO BALDERAS** assaulted those rival gang members with a deadly weapon by driving an automobile into them.

r.      On or about July 12, 2009, **MARCO MARTINEZ, ADRIAN SILVA, GEORGE GARZA,** and other LATIN KING members attended a Chapter meeting in Uvalde, Texas to discuss retaliation for rival gang members assaulting **ABRAM URBINA** and other LATIN KING members at a gas station in Uvalde, Texas.

s.      On or about July 12, 2009, during the Uvalde Chapter meeting, LATIN KING member Regional Inca **PETE PEREZ** called Regional Enforcer **MARCO MARTINEZ** over the

telephone and ordered **MARCO MARTINEZ** to order members of the Uvalde Chapter to carry out the retaliatory murder of E.L. and other rival gang members for the assault of **ABRAM URBINA** at a gas station in Uvalde, Texas.

   t. On or about July 12, 2009, **ADRIAN SILVA, GEORGE GARZA**, and other LATIN KING members volunteered to carry out the retaliatory murder ordered by **MARCO MARTINEZ** and **PETE PEREZ**.

   u. On or about July 12, 2009, **ADRIAN SILVA, GEORGE GARZA**, and other LATIN KING members believed rival gang members, including E.L., were in a hospital in San Antonio so **ADRIAN SILVA, GEORGE GARZA**, and other LATIN KING members traveled to San Antonio, Texas to murder E.L. and other rival gang members.

   v. On or about July 12, 2009, **ADRIAN SILVA, GEORGE GARZA**, and other LATIN KING members arrived in San Antonio, Texas and met with LATIN KING members in San Antonio and acquired firearms, gloves, and masks to use in the murder of the alleged hospitalized rival gang members, including E.L.

   w. On or about September 22, 2009, **ABRAM URBINA** and other LATIN KING members initiated a LATIN KING prospect, a person known to the Grand Jury, into the gang by assaulting him.

   x. Sometime in on or about 2010, **ADRIAN SILVA** and other LATIN KING members violated/assaulted a person known to the Grand Jury, to initiate him into the gang.

   y. During or about 2010, LATIN KING member **ADRIAN SILVA** ordered a LATIN KING prospect to murder S.C. and other rival gang members to prove his allegiance to the gang.

z. On or about March 14, 2010, during a LATIN KING meeting, **JAMES LONG** ordered other LATIN KING members to murder rival gang members A.L. and M.H.

aa. On or about March 14, 2010, **JAMES LONG** provided LATIN KING member **GEORGE GARZA** with a knife to stab rival gang members A.L. and M.H.

bb. On or about March 14, 2010, **ADRIAN SILVA, GEORGE GARZA,** and other LATIN KING members and associates used two female associates to lure rival gang members A.L. and M.H. to a residence in an attempt to murder A.L. and M.H., where **ADRIAN SILVA, GEORGE GARZA,** and other LATIN KING members and associates stabbed, punched, kicked and beat A.L. and M.H with a baseball bat repeatedly.

cc. On or about July 11, 2010, **JACOB MARISCAL, GREGORY HILL, EDMUNDO HILL, ESMEREJILDO BALDERAS**, and other LATIN KING members and associates attacked rival gang member I.H., by beating him with their fists and feet, hitting him in the head and face with a beer bottle and stabbing him in retaliation for the rival gang having assaulted another LATIN KING member.

dd. On or about May 14, 2011, **ESTEBAN GONZALEZ, MICHAEL ARRIAGA**, and other LATIN KING members and associates flashed gang signs and participated in a knife fight with rival gang members in a bar in Austin, Texas, which resulted in the death of a LATIN KING member.

ee. On or about May 14, 2011, **PETE PEREZ, MICHAEL ARRIAGA, JAMES LONG,** and other LATIN KING members attended a meeting at the residence of **MICHAEL ARRIAGA** to discuss murdering rival gang members in retaliation for the death of a LATIN KING member during the May 14, 2011 bar fight.

ff.    On or about May 14, 2011, LATIN KING Regional Inca **PETE PEREZ** ordered LATIN KING Uvalde Inca **JAMES LONG** to use a member of the Uvalde Chapter to murder rival gang members in retaliation for the death of a LATIN KING member during the May 14, 2011 bar fight.    **PETE PEREZ** also ordered members of the LATIN KING Austin Chapter to locate the intended targets.

gg.    On or about May 15, 2011, **JAMES LONG, MARCO MARTINEZ, ADRIAN SILVA, RODOLFO RODRIGUEZ, JACOB MARISCAL, JAKE MENDOZA, JOHN SILVA, GEORGE GARZA** and other LATIN KING members attended a meeting in Uvalde, Texas to discuss the retaliatory murder to be conducted for the death of a LATIN KING member during the May 14, 2011 bar fight.

hh.    On or about May 15, 2011, LATIN KING members volunteered to carry out the retaliatory murder of rival gang members for the May 14, 2011 bar fight.

ii.    On or about August 7, 2011, a ranking LATIN KING member ordered LATIN KING members to attack suspected rival gang members in downtown San Antonio, Texas.

jj.    On or about August 7, 2011, **MANUEL ROSARIO-PEREZ** and other LATIN KING members punched, kicked, assaulted and attempted to rob suspected rival gang members J.M. and D.P. in downtown San Antonio; however, J.M. and D.P. were not gang members. LATIN KING members yelled "LATIN KINGS" during the assault.

kk.    In or about September 2011, LATIN KING member **JAMES LONG** designated a former LATIN KING member as an S.O.S ("smash on sight") for failure to attend LATIN KING meetings, as required.

ll.    In or about January 2012, during a LATIN KING Regional meeting, Regional Inca **PETE PEREZ** and the LATIN KING Regional Enforcer issued an order to **JAMES LONG,**

**RODOLFO RODRIGUEZ**, and other leaders of the LATIN KING Uvalde Chapter, to murder rival gang members for the shooting of other LATIN KING members and associates.

mm.    In or about January 2012, based on the decision made at the LATIN KING Regional meeting, Uvalde Inca **JAMES LONG** ordered **RODOLFO RODRIGUEZ** to order an Uvalde LATIN KING member to murder a rival gang member in retaliation for the shooting of other LATIN KING members and associates.

nn.    In or about January 2012, **RODOLFO RODRIGUEZ** ordered a LATIN KING prospect to shoot rival gang members in response to the orders of **PETE PEREZ, JAMES LONG,** and other ranking LATIN KING members, to retaliate for the shooting of other LATIN KING members and associates.   In return, the LATIN KING prospect would be elevated to a full-fledge member of the LATIN KINGS.

oo.    On or about January 20, 2012, in response to the orders of **RODOLFO RODRIQUEZ**, authorized by LATIN KING Regional Inca **PETE PEREZ**, LATIN KING members and associates shot at rival gang members and associates, hitting D.R.   D.R. was not a rival gang member.

pp.    On or about January 20, 2012, LATIN KING members decided that E.V. violated LATIN KING rules by leaking details of the shooting of D.R. and other rival gang members and associates. **GEORGE GARZA** and other LATIN KING members violated/assaulted E.V. with a "full body fledge."   LATIN KING members **RODOLFO RODRIGUEZ** and **JORGE AGUERO** supervised the assault.

qq.    In or about 2012, **EDMUNDO HILL** and other LATIN KING members violated/assaulted a LATIN KING member, a person known to the Grand Jury.

rr.     Sometime in on or about 2012, **ADRIAN SILVA** and other LATIN KING members oversaw the violation/assault of a LATIN KING member, a person known to the Grand Jury, by other LATIN KING members for failure to pay his dues to the gang.

ss.     On or about February 6, 2012, **MANUEL ROSARIO-PEREZ** and other LATIN KING members attempted to murder rival gang members by shooting into the occupied dwelling of a rival gang member.

tt.     On or about May 14, 2012, **JAMES LONG, JACOB MARISCAL, GREGORY HILL, ALFREDO MARTINEZ, MARCO MARTINEZ, RODOLFO RODRIGUEZ, JOHN SILVA, JORGE AGUERO, ADRIAN SILVA**, and other LATIN KING members assaulted two former-LATIN KING members and associates, persons known to the Grand Jury, at a park in Uvalde.

uu.     In or about 2012, LATIN KING member **MANUEL ROSARIO-PEREZ** traveled from San Antonio, Texas to Uvalde, Texas for the purpose of assaulting a former-LATIN KING member, a person known to the Grand Jury, to carry out the standing K.O.S. order issued at an ALKN meeting where **JOE PIERCE, PETE PEREZ** and **JAMES LONG** were present.

vv.     In or about 2012, LATIN KING member **MANUEL ROSARIO-PEREZ** attempted to murder a former-LATIN KING member, a person known to the Grand Jury, pursuant to the standing K.O.S. order issued by LATIN KING leader **JAMES LONG.**

ww.     On or about January 9, 2013, **RODOLFO RODRIGUEZ, MICHAEL HILL,** and other LATIN KING members designated rival gang member P.Y. as a K.O.S. ("Kill On Sight") in retaliation for rival gang members allegedly shooting at the residence of **MICHAEL HILL.**

xx.     On or about January 9, 2013, **MICHAEL HILL, ABRAM URBINA**, and other LATIN KING members and associates attempted to carry out the K.O.S. order and murder P.Y. by shooting into the occupied residence of rival gang member P.Y.

yy.     On or about February 19, 2013, LATIN KING members **JOSE RIOS, BILLY RAMIREZ**, and other LATIN KING members and associates assaulted other individuals at an Applebee's Restaurant in Uvalde, Texas.

zz.     On or about April 13, 2013, LATIN KING members **JAKE MENDOZA, ALFREDO MARTINEZ**, and **BILLY RAMIREZ** attempted to murder rival gang member A.M. by shooting, stabbing and hitting him in the head with a brick as well as beating him with their hands and feet in retaliation for the rival gang member fighting with an associate of **BILLY RAMIREZ**.

aaa.     On or about April 13, 2013, LATIN KING member **BILLY RAMIREZ**, a felon, possessed a shotgun, which he used to shoot at individuals at or near rival gang member A.M. during the attempted murder of A.M.

bbb.     On or about September 11, 2013, **ABRAM URBINA, ALFREDO MARTINEZ, GEORGE GARZA, JOHN SILVA, ADRIAN SILVA**, and other LATIN KING members assaulted E.V. to initiate him into the gang.

ccc.     On or about September 27, 2013, **JAKE MENDOZA, ABRAM URBINA, ESMEREJILDO BALDERAS**, and other LATIN KING members and associates kicked, punched and stabbed E.G. at a party in an attempt to murder E.G.

ddd.     In or about 2014, **ADRIAN SILVA, JAMES LONG, JAKE MENDOZA**, and other LATIN KING members assaulted E.V. to expel him from the gang.

eee. On or about February 9, 2014, an incarcerated LATIN KING member stole a cellular telephone from Val Verde County Jail property room and provided it to other incarcerated LATIN KING members **EDMUNDO HILL** and **RODOLFO RODRIGUEZ.**

fff. On or about February 9, 2014 through February 12, 2014, LATIN KING members **EDMUNDO HILL, RODOLFO RODRIGUEZ, JAKE MENDOZA, BILLY RAMIREZ,** and other LATIN KING members and associates attempted to smuggle marijuana and other contraband into the Val Verde County Jail.

ggg. On or about April 9, 2014, **GEORGE GARZA, JOHN SILVA,** and other LATIN KING members assaulted a former-LATIN KING member, a person known to the Grand Jury, by beating him with brass knuckles, pursuant to the S.O.S. order issued by LATIN KING leader **JAMES LONG.**

hhh. On or about April 9, 2014, LATIN KING Regional Enforcer **BILLY RAMIREZ** checked on the injuries of the former LATIN KING member beaten by **GEORGE GARZA** and **JOHN SILVA,** a person known to the Grand Jury, to ensure he was sufficiently injured in compliance with the S.O.S. order issued by LATIN KING leader **JAMES LONG.**

iii. On or about June 22, 2014, during recorded conversations of LATIN KING members **BILLY RAMIREZ** and **EDMUNDO HILL, EDMUNDO HILL** stated he was the LATIN KING jailhouse Enforcer and **BILLY RAMIREZ** stated that he was the LATIN KING Regional Enforcer.

jjj. On or about June 22, 2014, during recorded conversations of LATIN KING members **BILLY RAMIREZ** and **EDMUNDO HILL, EDMUNDO HILL** complained that the Uvalde LATIN KING Chapter owed him gang payments that he was entitled to as an incarcerated

LATIN KING member. **BILLY RAMIREZ** stated he would ensure that **EDMUNDO HILL** received his payment.

kkk.    On or about June 22, 2014, **JOE PIERCE, CRYSTAL PIERCE, GONZALO NANDIN, BILLY RAMIREZ**, and other LATIN KING members attended a LATIN KING meeting and decided to assault a LATIN KING prospect to expel the prospect from the gang.

lll.    On or about June 22, 2014, after the LATIN KING meeting, **BILLY RAMIREZ** advised the LATIN KING prospect that he was no longer in good standing with the gang and to report to **CRYSTAL PIERCE** and **JOE PIERCE.**

mmm.    On or about June 22, 2014, during recorded conversations, LATIN KING members **BILLY RAMIREZ** and **PETE PEREZ** discussed the expulsion of a LATIN KING prospect from the gang.

nnn.    On or about June 24, 2014, during recorded conversations, **BILLY RAMIREZ**, and **EDMUNDO HILL** discussed **CRYSTAL PIERCE** placing money extorted from a person known to the Grand Jury in **EDMUNDO HILL's** prison commissary account as **BILLY RAMIREZ** instructed.

ooo.    On or about June 25, 2014, during recorded conversations, **BILLY RAMIREZ, MICHAEL ARRIAGA, JAMES LONG, JAKE MENDOZA, CRYSTAL PIERCE, MIGUEL FLORES, GONZALO NANDIN, JOSE RIOS, GREGORY HILL, EDMUNDO HILL, MARCO MARTINEZ,** and other LATIN KING members and associates discussed a retaliatory murder of C.S. and other rival gang members and associates for the stabbing of **JAKE MENDOZA.**

ppp.    On or about June 25, 2014, **BILLY RAMIREZ** arranged for an associate to provide **JAMES LONG** with a firearm to use in the murder of C.S. in retaliation for the stabbing of fellow LATIN KING member **JAKE MENDOZA**.

qqq.    On or about June 25, 2014, **JAMES LONG** accepted a firearm from an associate of **BILLY RAMIREZ** to use to murder of C.S.in retaliation for the stabbing of fellow LATIN KING member **JAKE MENDOZA**.

rrr.    On or about June 26, 2014, during recorded conversations between LATIN KING members **BILLY RAMIREZ** and **CRYSTAL PIERCE**, **BILLY RAMIREZ** said law enforcement warned **JAMES LONG** not to retaliate against C.S.    **CRYSTAL PIERCE** recommended to **BILLY RAMIREZ** that the Uvalde LATIN KINGs wait to retaliate against C.S. or to use LATIN KING members from the San Antonio or Austin Chapters to conduct the retaliatory shooting.

sss.    On or about June 26, 2014, **BILLY RAMIREZ** ordered **JAKE MENDOZA** and other LATIN KING members not to cooperate with law enforcement in connection with the stabbing of LATIN KING member **JAKE MENDOZA**.

ttt.    On or about June 27, 2014, **BILLY RAMIREZ** provided LATIN KING members **JOE PIERCE** and **CRYSTAL PIERCE** with a firearm.

uuu.    On or about June 27, 2014, **GONZALO NANDIN** stored firearms at his residence to include firearms belonging to fellow LATIN KING members and the LATIN KING San Antonio Chapter (a "Nation" firearm).

vvv.    On or about June 27, 2014, LATIN KING members **BILLY RAMIREZ** and **JAMES LONG** met to discuss murdering C.S. in retaliation for the stabbing of LATIN KING member **JAKE MENDOZA**.

www.  On or about June 27, 2014 **PETE PEREZ** and **MICHAEL ARRIAGA** confer over an order directing the retaliatory murder of rival gang members for the stabbing of LATIN KING member **JAKE MENDOZA**.

xxx.  On or about June 28, 2014, during recorded conversations, LATIN KING member **JAKE MENDOZA** told **BILLY RAMIREZ** that he knew the room where C.S. slept and could "get away with it easily."

yyy.  On or about June 28, 2014, **CRYSTAL PIERCE, GONZALO NANDIN,** and other LATIN KING members and associates arranged for the transfer of a firearm to LATIN KING members **BILLY RAMIREZ** and **JAKE MENDOZA** for the purpose of murdering C.S. in retaliation for the stabbing of LATIN KING member **JAKE MENDOZA**.

zzz.  On or about June 28, 2014, LATIN KING members **BILLY RAMIREZ** and **JAKE MENDOZA** acquired a firearm for the purpose of murdering C.S. in retaliation for the stabbing of LATIN KING member **JAKE MENDOZA**.

aaaa.  On or about June 28, 2014, LATIN KING member **BILLY RAMIREZ** changed his telephone number to avoid law enforcement detection.

bbbb.  From on or about June 1, 2014, up to and including the date of the Indictment, **EDMUNDO HILL, BILLY RAMIREZ, JAMES LONG, GREGORY HILL, JAKE MENDOZA,** and other LATIN KING members and associates extort and attempted to extort money from other LATIN KING members and associates to provide for the commissary account of incarcerated member **EDMUNDO HILL**.

cccc.  On or about August 1, 2014, during recorded conversations, **BILLY RAMIREZ** and **MICHAEL ARRIGA** discussed **BILLY RAMIREZ** stepping down from his

leadership position until the LATIN KING leadership sees paperwork clearing **BILLY RAMIREZ**.

dddd.   On or about August 20, 2014, **JAMES LONG** sold a "Nation" firearm to a LATIN KING associate to generate profit for incarcerated member **EDMUNDO HILL**.

eeee.   On or about August 21, 2014, LATIN KING member **BILLY RAMIREZ** sold methamphetamine to a LATIN KING associate at an inflated price to generate proceeds for incarcerated LATIN KING member **EDMUNDO HILL**. Afterward, **BILLY RAMIREZ** told the LATIN KING associate to contact **JAMES LONG** so he could contact **EDMUNDO HILL**.

ffff.   On or about October 18, 2014, LATIN KING members believed that LATIN KING member M.D.L.G. violated LATIN KING rules by using a prohibited substance.

gggg.   On or about October 18, 2014, LATIN KING member **JAMES LONG** went to M.D.L.G.'s residence to determine if M.D.L.G. violated LATIN KING rules.

hhhh.   On or about October 20, 2014, during recorded conversations, **JAMES LONG, BILLY RAMIREZ, ADRIAN SILVA, GREGORY HILL, JACOB MARISCAL**, and other LATIN KING members discussed LATIN KING member M.D.L.G. breaking LATIN KING rules and the punishment for doing so.

iiii.   On or about October 20, 2014, LATIN KING member **MICHAEL ARRIAGA** ordered **JAMES LONG** to travel from Uvalde, Texas to Austin, Texas to meet with **PETE PEREZ** because **PETE PEREZ** did not want to talk over the telephone.

jjjj.   On or about October 20, 2014, LATIN KING leaders **PETE PEREZ, MICHAEL ARRIAGA, JAMES LONG,** and **JOE PIERCE** met in Austin, Texas to discuss gang business.

kkkk.  On or about October 20, 2014, LATIN KING members **JAMES LONG** and **ADRIAN SILVA** arranged an Uvalde Chapter meeting for the violation/assault of M.D.L.G. for breaking LATIN KING rules.

llll.  On or about October 25, 2014, **JAMES LONG, ADRIAN SILVA, JOHN SILVA, GREGORY HILL, JORGE AGUERO, ALFREDO MARTINEZ**, and other LATIN KING members met at the residence of another LATIN KING member to violate/assault LATIN KING member M.D.L.G. for breaking LATIN KING rules.

mmmm.  On or about October 25, 2014, LATIN KING member **BILLY RAMIREZ** called LATIN KING member **JAMES LONG** to determine whether the violation/assault of M.D.L.G. occurred.

nnnn.  Sometime in on or about 2014, **JAMES LONG, GREGORY HILL, BILLY RAMIREZ, JACOB MARISCAL, PETE PEREZ** and other LATIN KING members and associates "cleared" the paperwork of incarcerated LATIN KING member **RODOLFO RODRIGUEZ** so he would continue to have good standing in the gang while in jail and not be violated/assaulted for being an informant.

oooo.  On or about February 1, 2015, LATIN KING members **ADRIAN SILVA** and **JOHN SILVA** attempted to assault and stab former LATIN KING member a person known to the Grand Jury.

All in violation of Title 18, United States Code, Section 1962 (d).

## COUNT TWO
[21 U.S.C. § 841(a)(1) & (b)(1)(B) and 846]

9.  Beginning on or about January 1, 2011, until the date of this Indictment, in the Western District of Texas, Defendants,

BILLY RAMIREZ a/k/a "Rascal" (3)
MARCO ANTONIO MARTINEZ a/k/a "Cartel" a/k/a "Cartelly" a/k/a "Telly" (5)
JOE PIERCE a/k/a "Dro" (7)
JORGE AGUERO a/k/a "Fat Rat" a/k/a "G" (8)
GREGORY HILL a/k/a "Chaotic" a/k/a G Hill" (10)
CRYSTAL PIERCE a/k/a "Shorty" (12)
MICHAEL ANTHONY HILL a/k/a "Chip" (14)
JAKE MENDOZA a/k/a "Thug" (15)
JOHN ANDREW SILVA a/k/a "Chuco" (17)
ABRAM URBINA a/k/a "Tank" (18)
ESMEREJILDO BALDERAS a/k/a "Hildo" (19)
GEORGE ANTHONY GARZA a/k/a "Tone" (20)
ALFREDO MARTINEZ (21)

knowingly, and intentionally and unlawfully combined, conspired, confederated and agreed with others known and unknown to commit the following offense against the United States: to possess with the intent to distribute 500 grams or more of a mixture or substance containing a detectable amount of COCAINE, a Schedule II Controlled Substance, contrary to Title 21, United States Code, Section 841(a)(1) & (b)(1)(B) and 846.

<u>COUNT THREE</u>
[21 U.S.C. § 841(a)(1) & (b)(1)(A) and 846]

10. Between on or about December 1, 2012 to on or about the date of this indictment, in the Western District of Texas, Defendants,

BILLY RAMIREZ a/k/a "Rascal" (3)
MARCO ANTONIO MARTINEZ a/k/a/ "Cartel" (5)
JOSE RIOS a/k/a "Creeper" (16)

knowingly, and intentionally and unlawfully combined, conspired, confederated and agreed with others known and unknown to commit the following offense against the United States: to possess with the intent to distribute 50 grams or more of METHAMPHETAMINE, a Schedule II controlled substance, in violation of Title 21, United States Code, Section 841(a)(1) & (b)(1)(A) and 846.

# NOTICE OF UNITED STATES OF AMERICA'S DEMAND FOR FORFEITURE
### [*See* Fed. R. Crim. P. 32.2.]

## I.
### RICO Violation and Forfeiture Statutes
### [Title 18 U.S.C. § 1962(d),
### subject to forfeiture pursuant to Title 18 U.S.C. §§ 1963(a) and (b).]

As a result of the foregoing criminal violation set forth in Count One, the United States of America gives notice to the Defendants of its intent to seek the forfeiture of the property described below upon conviction pursuant to Fed. R. Crim. P. 32.2 and Title 18, United States Code, Sections 1963(a) and (b), which state:

> **Title 18 U.S.C. § 1963.   Criminal penalties**
> **(a)** Whoever violates any provision of section 1962 of this chapter . . . shall forfeit to the United States, irrespective of any provision of State law—
>> **(1)** any interest the person has acquired or maintained in violation of section 1962;
>> **(2)** any—
>>> **(A)** interest in;
>>> **(B)** security of;
>>> **(C)** claim against; or
>>> **(D)** property or contractual right of any kind affording a source of influence over;
>>> any enterprise which the person has established, operated, controlled, conducted, or participated in the conduct of, in violation of section 1962; and
>> **(3)** any property constituting, or derived from, any proceeds which the person obtained, directly or indirectly, from racketeering activity or unlawful debt collection in violation of section 1962.
> The court, in imposing sentence on such person shall order, in addition to any other sentence imposed pursuant to this section, that the person forfeit to the United States all property described in this subsection . . . .
> **(b)** Property subject to criminal forfeiture under this section includes—
>> **(1)** real property, including things growing on, affixed to, and found in land; and
>> **(2)** tangible and intangible personal property, including rights, privileges, interests, claims and securities.

This Notice of Demand for Forfeiture includes, but is not limited to the property described below in paragraphs II and V.

## II.
## Money Judgment for Count One

**Money Judgment**: A sum of money equal to the value of any property and proceeds subject to forfeiture pursuant to Title 18 U.S.C. §§ 1963(a) and (b) for the violations set forth above in Count One for which the Defendants are jointly and severally liable.


## III.
## Drug Violations and Forfeiture Statutes
## [Title 21 U.S.C. §§ 841(a)(1), 841(b)(1)(A), 841(b)(1)(B), and 846, subject to forfeiture pursuant to Title 21 U.S.C. §§ 853(a)(1) and (2).]

As a result of the foregoing criminal violations set forth in Counts Two and Three, the United States of America gives notice to the Defendants of its intent to seek the forfeiture of the property described below upon conviction pursuant to Fed. R. Crim. P. 32.2 and Title 21, United States Code, Sections 853(a)(1) and (2), which state:

> **Title 21 U.S.C. § 853. Criminal forfeitures**
> **(a) Property subject to criminal forfeiture**
> Any person convicted of a violation of this subchapter or subchapter II of this chapter punishable by imprisonment for more than one year shall forfeit to the United States, irrespective of any provision of State law—
> > **(1)** any property constituting, or derived from, any proceeds the person obtained, directly or indirectly, as the result of such violation;
> > **(2)** any of the person's property used, or intended to be used, in any manner or part, to commit, or to facilitate the commission of, such violation.

This Notice of Demand for Forfeiture includes, but is not limited to the property described below in paragraphs IV and V.


## IV.
## Money Judgment for Counts Two and Three

**Money Judgment**: A sum of money equal to the value of any proceeds and facilitating property from the violations set forth above in Counts Two and Three for which the Defendants are jointly and severally liable.

# V.
## Substitute Assets

If any of the property described above as being subject to forfeiture for the violations set forth above, as a result of any act or omission of the Defendants:

a.   cannot be located upon the exercise of due diligence;
b.   has been transferred or sold to, or deposited with, a third party;
c.   has been placed beyond the jurisdiction of the court;
d.   has been substantially diminished in value; or
e.   has been commingled with other property which cannot be divided without difficulty;

it is the intent of the United States of America to seek forfeiture of any other property, up to the value of said money judgment, as substitute assets pursuant to Title 18, United States Code, Section 1963(m), Title 21, United States Code, Section 853(p) and Fed. R. Crim. P. 32.2(e)(1).

A TRUE BILL.

_____
FOREPERSON

RICHARD L. DURBIN, JR.
United States Attorney

By: _____
RALPH PARADISO
Assistant United States Attorney

By: _____
KATIE GRIFFIN
Assistant United States Attorney

SEALED:

UNSEALED: XX

# UNITED STATES DISTRICT COURT
## WESTERN DISTRICT OF TEXAS
### DEL RIO DIVISION

COUNTY: <u>UVALDE</u>  **USAO #:<u>2013R22408</u>**  CASE# /JUDGE:

DATE: <u>OCTOBER 7, 2015</u> MAG. CT. #:<u> MATTER </u>  **DR15CR1211**

AUSA: <u>RALPH PARADISO</u>

DEFENDANT: <u>PETE PEREZ, AKA "JERRY", AKA "XKAPE"</u>

CITIZENSHIP: <u>USC</u>

INTERPRETER NEEDED<u>: YES</u>  Language: <u>SPANISH</u>

DEFENSE ATTORNEY: <u>NOT APPOINTED YET</u>

ADDRESS OF ATTORNEY:

DEFENDANT IS: NOT DETAINED  DATE OF ARREST: <u>          </u>

BENCH WARRANT NEEDED:

PROBATION OFFICER:  N/A

NAME AND ADDRESS OF SURETY:  N/A

YOUTH CORRECTIONS ACT APPLICABLE:  NO

PROSECUTION BY:  INDICTMENT

OFFENSE: (Code & Description): <u> Count 1 – 18 U.S.C. § 1962(d) Conspiracy to violate RICO </u>

OFFENSE IS A: <u>FELONY</u>

MAXIMUM SENTENCE:<u> COUNTS 1: Up to LIFE imprisment; up to $250,000 fine;  up to 5 years of supervised release;  $100 special assessment for each count of conviction</u>

PENALTY IS MANDATORY:  Yes <u> XX </u>  No <u> XX </u>

REMARKS: <u>  See above                                        </u>W D T-Cr-3

SEALED:

UNSEALED:  XX

# UNITED STATES DISTRICT COURT
## WESTERN DISTRICT OF TEXAS
## DEL RIO DIVISION

COUNTY:  <u>UVALDE</u>     **USAO #:2013R22408**  CASE# /JUDGE:

DATE:  OCTOBER 7, 2015 MAG. CT. #:   MATTER

AUSA:   RALPH PARADISO

**DR 15 CR 1211**

DEFENDANT: MICHAEL RAY ARRIAGA, AKA "FEZ"

CITIZENSHIP: USC

INTERPRETER NEEDED:   YES        Language:  SPANISH

DEFENSE ATTORNEY: NOT APPOINTED YET

ADDRESS OF ATTORNEY:

DEFENDANT IS: NOT DETAINED        DATE OF ARREST:  ?

BENCH WARRANT NEEDED:

PROBATION OFFICER:   N/A

NAME AND ADDRESS OF SURETY:    N/A

YOUTH CORRECTIONS ACT APPLICABLE:  NO

PROSECUTION BY:  INDICTMENT

OFFENSE: (Code & Description):   Count 1 – 18 U.S.C. § 1962(d) Conspiracy to violate RICO

OFFENSE IS A:  FELONY

MAXIMUM SENTENCE: COUNTS 1: Up to LIFE imprisonment; up to $250,000 fine;   up to 5 years of supervised release;   $100 special assessment for each count of conviction

PENALTY IS MANDATORY:        Yes  XX        No  XX

REMARKS:    See above                                         W D T-Cr-3

SEALED:

UNSEALED:  XX

**UNITED STATES DISTRICT COURT**
**WESTERN DISTRICT OF TEXAS**
**DEL RIO DIVISION**

COUNTY:  <u>UVALDE</u>     **USAO #:<u>2013R22408</u>**  CASE# /JUDGE:

DATE:  <u>OCTOBER 7, 2015</u> MAG. CT. #:<u>  MATTER  </u>

AUSA:  <u>RALPH PARADISO</u>

DEFENDANT: <u>BILLY RAMIREZ, AKA "RASCAL"</u>         **DR 15 CR 1211**

CITIZENSHIP: <u>USC</u>

INTERPRETER NEEDED<u>:   YES</u>      Language:  <u>SPANISH</u>

DEFENSE ATTORNEY: <u>NOT APPOINTED YET</u>

ADDRESS OF ATTORNEY:

DEFENDANT IS: NOT DETAINED      DATE OF ARREST:         _____

BENCH WARRANT NEEDED:

PROBATION OFFICER:   N/A

NAME AND ADDRESS OF SURETY:    N/A

YOUTH CORRECTIONS ACT APPLICABLE:  NO

PROSECUTION BY:  INDICTMENT

OFFENSE: (Code & Description):  <u>Count 1 – 18 U.S.C. § 1962(d) Conspiracy to violate RICO;</u>
<u>Count 2 – 21 U.S.C. § 846 Conspiracy to Possess with Intent to distribute Cocaine; Count 3 - 21</u>
<u>U.S.C. § 846 Conspiracy to Possess with Intent to distribute Methamphetamine</u>

OFFENSE IS A:  <u>FELONY</u>

MAXIMUM SENTENCE: <u>COUNT 1: Up to LIFE imprisonment; up to $250,000 fine;   up to 5</u>
<u>years of supervised release;   $100 special assessment for each count of conviction; COUNT 2:</u>
<u>5-40 YEARS IMPRISONMENT; up to $5,000,000 million fine; up to 4 years of supervised</u>
<u>release; $100 special assessment for each count of conviction; COUNT 3: 10-LIFE imprisonment;</u>
<u>up to $10,000,000 million fine; up to 5 years of supervised release; $100 special assessment for</u>
<u>each count of conviction.</u>

PENALTY IS MANDATORY:          Yes <u>XX  </u>     No <u>XX  </u>

REMARKS: <u>   See above                                          </u>W D T-Cr-3

SEALED:

UNSEALED: XX

# UNITED STATES DISTRICT COURT
## WESTERN DISTRICT OF TEXAS
## DEL RIO DIVISION

COUNTY: <u>UVALDE</u>    USAO #:<u>**2013R22408**</u>  CASE# /JUDGE:

DATE: <u>OCTOBER 7, 2015</u> MAG. CT. #:<u>  MATTER  </u>  **DR 15 CR 1211**

AUSA: RALPH PARADISO

DEFENDANT: <u>JAMES MARTY LONG, AKA "WHITEBOY", AKA "JIMMY"</u>

CITIZENSHIP: <u>USC</u>

INTERPRETER NEEDED:<u>  YES  </u>    Language: <u>SPANISH</u>

DEFENSE ATTORNEY: <u>NOT APPOINTED YET</u>

ADDRESS OF ATTORNEY:

DEFENDANT IS: NOT DETAINED    DATE OF ARREST:

BENCH WARRANT NEEDED:

PROBATION OFFICER:   N/A

NAME AND ADDRESS OF SURETY:    N/A

YOUTH CORRECTIONS ACT APPLICABLE:  NO

PROSECUTION BY:  INDICTMENT

OFFENSE: (Code & Description): <u>Count 1 – 18 U.S.C. § 1962(d) Conspiracy to violate RICO;</u>

<u>Count 2 – 21 U.S.C. § 846 Conspiracy to Possess with Intent to distribute Cocaine</u>

OFFENSE IS A: <u>FELONY</u>

MAXIMUM SENTENCE:<u> COUNT 1: Up to LIFE imprisonment; up to $250,000 fine;  up to 5</u>

<u>years of supervised release;  $100 special assessment for each count of conviction.</u>

PENALTY IS MANDATORY:         Yes <u>XX</u>    No <u>XX</u>

REMARKS: <u>  See above                          </u>W D T-Cr-3

SEALED:

UNSEALED:  XX

# UNITED STATES DISTRICT COURT
## WESTERN DISTRICT OF TEXAS
### DEL RIO DIVISION

COUNTY:  UVALDE      USAO #:2013R22408   CASE# /JUDGE:

DATE:  OCTOBER 7, 2015 MAG. CT. #:__MATTER__

AUSA:  RALPH PARADISO

DEFENDANT: ADRIAN SILVA, AKA "TROUBLE"    **DR15CR1211**

CITIZENSHIP: USC

INTERPRETER NEEDED:__YES__      Language:  SPANISH

DEFENSE ATTORNEY: NOT APPOINTED YET

ADDRESS OF ATTORNEY:

DEFENDANT IS: NOT DETAINED      DATE OF ARREST:

BENCH WARRANT NEEDED:

PROBATION OFFICER:  N/A

NAME AND ADDRESS OF SURETY:    N/A

YOUTH CORRECTIONS ACT APPLICABLE:  NO

PROSECUTION BY:  INDICTMENT

OFFENSE: (Code & Description):   Count 1 – 18 U.S.C. § 1962(d) Conspiracy to violate RICO; Count 2 – 21 U.S.C. § 846 Conspiracy to Possess with Intent to distribute Cocaine

OFFENSE IS A:  FELONY

MAXIMUM SENTENCE: COUNT 1: Up to LIFE imprisonment; up to $250,000 fine;  up to 5 years of supervised release;  $100 special assessment for each count of conviction.

PENALTY IS MANDATORY:        Yes XX      No  XX

REMARKS:__See above_____W D T-Cr-3

SEALED:

UNSEALED: XX

# UNITED STATES DISTRICT COURT
## WESTERN DISTRICT OF TEXAS
### DEL RIO DIVISION

COUNTY: <u>UVALDE</u>     **USAO #:2013R22408**     CASE# /JUDGE:

DATE: <u>OCTOBER 7, 2015</u> MAG. CT. #:<u>  MATTER  </u>

AUSA: <u>RALPH PARADISO</u>                          **DR15CR1211**

DEFENDANT: <u>JORGE AGUERO, AKA "FAT RAT", AKA "G"</u>

CITIZENSHIP: <u>USC</u>

INTERPRETER NEEDED:<u>   YES</u>          Language: <u>SPANISH</u>

DEFENSE ATTORNEY: <u>NOT APPOINTED YET</u>

ADDRESS OF ATTORNEY:

DEFENDANT IS: NOT DETAINED     DATE OF ARREST:

BENCH WARRANT NEEDED:  <u>   </u>

PROBATION OFFICER:   N/A

NAME AND ADDRESS OF SURETY:     N/A

YOUTH CORRECTIONS ACT APPLICABLE:  NO

PROSECUTION BY:  INDICTMENT

OFFENSE: (Code & Description):  <u>Count 1 – 18 U.S.C. § 1962(d) Conspiracy to violate RICO;</u>
<u>Count 2 – 21 U.S.C. § 846 Conspiracy to Possess with Intent to distribute Cocaine; Count 3 - 21</u>
<u>U.S.C. § 846 Conspiracy to Possess with Intent to distribute Methamphetamine</u>

OFFENSE IS A:  <u>FELONY</u>

MAXIMUM SENTENCE: <u>COUNT 1: Up to LIFE imprisment; up to $250,000 fine;   up to 5</u>
<u>years of supervised release;   $100 special assessment for each count of conviction; COUNT 2:</u>
<u>5-40 YEARS IMPRISONMENT; up to $5,000,000 million fine; up to 4 years of supervised</u>
<u>release; $100 special assessment for each count of conviction.</u>

PENALTY IS MANDATORY:               Yes <u>XX</u>      No <u>XX</u>

REMARKS:  <u>   See above                                      </u>W D T-Cr-3

SEALED:

UNSEALED: XX

**UNITED STATES DISTRICT COURT**
**WESTERN DISTRICT OF TEXAS**
**DEL RIO DIVISION**

COUNTY: <u>UVALDE</u>     **USAO #:2013R22408**  CASE# /JUDGE:

DATE: <u>OCTOBER 7, 2015</u> MAG. CT. #:<u>  MATTER  </u>   **DR15CR1211**

AUSA: <u>RALPH PARADISO</u>

DEFENDANT: <u>GREGORY HILL, AKA "CHAOTIC", AKA "G HILL"</u>

CITIZENSHIP: <u>USC</u>

INTERPRETER NEEDED: <u>  YES  </u>     Language: <u>SPANISH</u>

DEFENSE ATTORNEY: <u>NOT APPOINTED YET</u>

ADDRESS OF ATTORNEY:

DEFENDANT IS: NOT DETAINED     DATE OF ARREST:

BENCH WARRANT NEEDED:

PROBATION OFFICER:   N/A

NAME AND ADDRESS OF SURETY:   N/A

YOUTH CORRECTIONS ACT APPLICABLE:  NO

PROSECUTION BY:  INDICTMENT

OFFENSE: (Code & Description):  <u>Count 1 – 18 U.S.C. § 1962(d) Conspiracy to violate RICO;</u>

<u>Count 2 – 21 U.S.C. § 846 Conspiracy to Possess with Intent to distribute Cocaine</u>

OFFENSE IS A:  <u>FELONY</u>

MAXIMUM SENTENCE: <u>COUNT 1: Up to LIFE imprisonment; up to $250,000 fine;  up to 5</u>

<u>years of supervised release;  $100 special assessment for each count of conviction; COUNT 2:</u>

<u>5-40 year imprisonment; up to $5,000,000 million fine; up to 4 years of supervised release; $100</u>

<u>special assessment for each count of conviction.</u>

PENALTY IS MANDATORY:          Yes <u>XX</u>      No <u>XX</u>

REMARKS: <u>  See above                              </u> W D T-Cr-3

SEALED:

UNSEALED: XX

### UNITED STATES DISTRICT COURT
### WESTERN DISTRICT OF TEXAS
### DEL RIO DIVISION

COUNTY: UVALDE  **USAO #:2013R22408**  CASE# /JUDGE:

DATE: OCTOBER 7, 2015 MAG. CT. #: MATTER

AUSA: RALPH PARADISO

**DR 15 CR 1211**

DEFENDANT: RODOLFO RODRIGUEZ, AKA "PUN", AKA "SWEETS"

CITIZENSHIP: USC

INTERPRETER NEEDED: YES  Language: SPANISH

DEFENSE ATTORNEY: NOT APPOINTED YET

ADDRESS OF ATTORNEY:

DEFENDANT IS: NOT DETAINED  DATE OF ARREST: _____

BENCH WARRANT NEEDED: ___

PROBATION OFFICER: N/A

NAME AND ADDRESS OF SURETY:  N/A

YOUTH CORRECTIONS ACT APPLICABLE: NO

PROSECUTION BY: INDICTMENT

OFFENSE: (Code & Description):  Count 1 – 18 U.S.C. § 1962(d) Conspiracy to violate RICO

OFFENSE IS A: FELONY

MAXIMUM SENTENCE: COUNT 1: Up to LIFE imprisonment; up to $250,000 fine; up to 5 years of supervised release;  $100 special assessment for each count of conviction

PENALTY IS MANDATORY:  Yes XX  No XX

REMARKS:  See above _____ W D T-Cr-3

SEALED:

UNSEALED:  XX

# UNITED STATES DISTRICT COURT
## WESTERN DISTRICT OF TEXAS
## DEL RIO DIVISION

COUNTY:  UVALDE      **USAO #:2013R22408**  CASE# /JUDGE:

DATE:  OCTOBER 7, 2015 MAG. CT. #:   MATTER

AUSA:  RALPH PARADISO                    **DR15CR1211**

DEFENDANT: CRYSTAL PIERCE, AKA "SHORTY"

CITIZENSHIP: USC

INTERPRETER NEEDED:   YES       Language:  SPANISH

DEFENSE ATTORNEY: NOT APPOINTED YET

ADDRESS OF ATTORNEY:

DEFENDANT IS: NOT DETAINED      DATE OF ARREST:

BENCH WARRANT NEEDED:

PROBATION OFFICER:   N/A

NAME AND ADDRESS OF SURETY:     N/A

YOUTH CORRECTIONS ACT APPLICABLE:  NO

PROSECUTION BY:  INDICTMENT

OFFENSE: (Code & Description):   Count 1 – 18 U.S.C. § 1962(d) Conspiracy to violate RICO;

Count 2 – 21 U.S.C. § 846 Conspiracy to Possess with Intent to distribute Cocaine

OFFENSE IS A:  FELONY

MAXIMUM SENTENCE: COUNT 1: Up to LIFE imprisonment; up to $250,000 fine;  up to 5

years of supervised release;  $100 special assessment for each count of conviction; COUNT 2:

5-40 year imprisonment; up to $5,000,000 million fine; up to 4 years of supervised release; $100

special assessment for each count of conviction.

PENALTY IS MANDATORY:          Yes  XX       No  XX

REMARKS:    See above _____ W D T-Cr-3

SEALED:

UNSEALED:  XX

## UNITED STATES DISTRICT COURT
## WESTERN DISTRICT OF TEXAS
## DEL RIO DIVISION

COUNTY:  UVALDE    **USAO #:2013R22408**  CASE# /JUDGE:

DATE:  OCTOBER 7, 2015 MAG. CT. #:  MATTER

AUSA:  RALPH PARADISO                      **DR15CR1211**

DEFENDANT: JACOB   MARISCAL,  AKA "RIGHTEOUS"

CITIZENSHIP: USC

INTERPRETER NEEDED:   YES        Language:  SPANISH

DEFENSE ATTORNEY: NOT APPOINTED YET

ADDRESS OF ATTORNEY:

DEFENDANT IS: NOT DETAINED        DATE OF ARREST:

BENCH WARRANT NEEDED:

PROBATION OFFICER:   N/A

NAME AND ADDRESS OF SURETY:    N/A

YOUTH CORRECTIONS ACT APPLICABLE:  NO

PROSECUTION BY:  INDICTMENT

OFFENSE: (Code & Description):   Count 1 – 18 U.S.C. § 1962(d) Conspiracy to violate RICO

OFFENSE IS A:  FELONY

MAXIMUM SENTENCE: COUNT 1: Up to LIFE imprisonment; up to $250,000 fine;  up to 5 years of supervised release;  $100 special assessment for each count of conviction

PENALTY IS MANDATORY:           Yes XX        No  XX

REMARKS:    See above                                                    W D T-Cr-3

SEALED:

UNSEALED: XX

# UNITED STATES DISTRICT COURT
## WESTERN DISTRICT OF TEXAS
### DEL RIO DIVISION

COUNTY: <u>UVALDE</u>    **USAO #:2013R22408**   CASE# /JUDGE:

DATE: OCTOBER 7, 2015 MAG. CT. #:   MATTER

AUSA: RALPH PARADISO

**DR15CR1211**

DEFENDANT: MICHAEL ANTHONY HILL, AKA "CHIP"

CITIZENSHIP: USC

INTERPRETER NEEDED:   YES        Language:  SPANISH

DEFENSE ATTORNEY: NOT APPOINTED YET

ADDRESS OF ATTORNEY:

DEFENDANT IS: NOT DETAINED        DATE OF ARREST: ̄ ̄ ̄ ̄

BENCH WARRANT NEEDED:   __

PROBATION OFFICER:   N/A

NAME AND ADDRESS OF SURETY:    N/A

YOUTH CORRECTIONS ACT APPLICABLE:  NO

PROSECUTION BY:  INDICTMENT

OFFENSE: (Code & Description):   Count 1 – 18 U.S.C. § 1962(d) Conspiracy to violate RICO; Count 2 – 21 U.S.C. § 846 Conspiracy to Possess with Intent to distribute Cocaine

OFFENSE IS A:  FELONY

MAXIMUM SENTENCE: COUNT 1: Up to LIFE imprisonment; up to $250,000 fine;  up to 5 years of supervised release;  $100 special assessment for each count of conviction; COUNT 2: 5-40 year imprisonment; up to $5,000,000 million fine; up to 4 years of supervised release; $100 special assessment for each count of conviction.

PENALTY IS MANDATORY:              Yes XX       No XX

REMARKS:   See above                                    W D T-Cr-3

SEALED:

UNSEALED: XX

**UNITED STATES DISTRICT COURT**
**WESTERN DISTRICT OF TEXAS**
**DEL RIO DIVISION**

COUNTY: UNDERLINE UVALDE      **USAO #:2013R22408**   CASE# /JUDGE:

DATE: OCTOBER 7, 2015 MAG. CT. #:   MATTER      **DR15CR1211**

AUSA: RALPH PARADISO

DEFENDANT: JAKE   MENDOZA, AKA "THUG"

CITIZENSHIP: USC

INTERPRETER NEEDED:   YES        Language: SPANISH

DEFENSE ATTORNEY: NOT APPOINTED YET

ADDRESS OF ATTORNEY:

DEFENDANT IS: NOT DETAINED      DATE OF ARREST: ￢￢￢        ____

BENCH WARRANT NEEDED:

PROBATION OFFICER:   N/A

NAME AND ADDRESS OF SURETY:    N/A

YOUTH CORRECTIONS ACT APPLICABLE:  NO

PROSECUTION BY:  INDICTMENT

OFFENSE: (Code & Description):   Count 1 – 18 U.S.C. § 1962(d) Conspiracy to violate RICO;

Count 2 – 21 U.S.C. § 846 Conspiracy to Possess with Intent to distribute Cocaine

OFFENSE IS A:  FELONY

MAXIMUM SENTENCE: COUNT 1: Up to LIFE imprisonment; up to $250,000 fine;   up to 5

years of supervised release;   $100 special assessment for each count of conviction; COUNT 2:

5-40 year imprisonment; up to $5,000,000 million fine; up to 4 years of supervised release; $100

special assessment for each count of conviction.

PENALTY IS MANDATORY:            Yes XX         No XX

REMARKS:    See above                                  W D T-Cr-3

SEALED:

UNSEALED:  XX

# UNITED STATES DISTRICT COURT
## WESTERN DISTRICT OF TEXAS
## DEL RIO DIVISION

COUNTY:  <u>UVALDE</u>     **USAO #:2013R22408**  CASE# /JUDGE:

DATE:  OCTOBER 7, 2015 MAG. CT. #:_ MATTER_

AUSA:  RALPH PARADISO

DEFENDANT: JOSE RIOS, AKA "CREEPER"           **DR15CR1211**

CITIZENSHIP: USC

INTERPRETER NEEDED:_ YES_         Language:  SPANISH

DEFENSE ATTORNEY: NOT APPOINTED YET

ADDRESS OF ATTORNEY:

DEFENDANT IS: NOT DETAINED          DATE OF ARREST:              )

BENCH WARRANT NEEDED:  ¯

PROBATION OFFICER:   N/A

NAME AND ADDRESS OF SURETY:    N/A

YOUTH CORRECTIONS ACT APPLICABLE:  NO

PROSECUTION BY:  INDICTMENT

OFFENSE: (Code & Description):_ Count 1 – 18 U.S.C. § 1962(d) Conspiracy to violate RICO;
Count 3 - 21 U.S.C. § 846 Conspiracy to Possess with Intent to distribute Methamphetamine_

OFFENSE IS A:  FELONY

MAXIMUM SENTENCE: COUNT 1: Up to LIFE imprisonment; up to $250,000 fine;   up to 5
years of supervised release;   $100 special assessment for each count of conviction; COUNT 3:
10-LIFE imprisonment; up to $10,000,000 million fine; up to 5 years of supervised release; $100
special assessment for each count of conviction.

PENALTY IS MANDATORY:                 Yes _XX_       No _XX_

REMARKS:_   See above                          _W D T-Cr-3

SEALED:

UNSEALED:  XX

**UNITED STATES DISTRICT COURT**
**WESTERN DISTRICT OF TEXAS**
**DEL RIO DIVISION**

COUNTY:  UVALDE     **USAO #:2013R22408**   CASE# /JUDGE:

DATE:  OCTOBER 7, 2015 MAG. CT. #:   MATTER

AUSA:  RALPH PARADISO

DEFENDANT: JOHN ANDREW SILVA, AKA "CHUCHO"

CITIZENSHIP: USC

INTERPRETER NEEDED:   YES      Language:  SPANISH

DEFENSE ATTORNEY: NOT APPOINTED YET

ADDRESS OF ATTORNEY:

DEFENDANT IS: NOT DETAINED      DATE OF ARREST:

BENCH WARRANT NEEDED:

PROBATION OFFICER:   N/A

NAME AND ADDRESS OF SURETY:    N/A

YOUTH CORRECTIONS ACT APPLICABLE:  NO

PROSECUTION BY:  INDICTMENT

OFFENSE: (Code & Description):   Count 1 – 18 U.S.C. § 1962(d) Conspiracy to violate RICO;

Count 2 – 21 U.S.C. § 846 Conspiracy to Possess with Intent to distribute Cocaine

OFFENSE IS A:  FELONY

MAXIMUM SENTENCE: COUNT 1: Up to LIFE imprisonment; up to $250,000 fine;  up to 5

years of supervised release;  $100 special assessment for each count of conviction; COUNT 2:

5-40 year imprisonment; up to $5,000,000 million fine; up to 4 years of supervised release; $100

special assessment for each count of conviction.

PENALTY IS MANDATORY:          Yes  XX        No  XX

REMARKS:    See above                              W D T-Cr-3

**DR15CR1211**

SEALED:

UNSEALED: XX

# UNITED STATES DISTRICT COURT
## WESTERN DISTRICT OF TEXAS
## DEL RIO DIVISION

COUNTY: <u>UVALDE</u>   **USAO #:2013R22408**   CASE# /JUDGE:

DATE: OCTOBER 7, 2015 MAG. CT. #:___MATTER___

AUSA: RALPH PARADISO

DEFENDANT: ABRAM URBINA, AKA "TANK"       **DR15CR1211**

CITIZENSHIP: USC

INTERPRETER NEEDED:___YES___     Language: SPANISH

DEFENSE ATTORNEY: NOT APPOINTED YET

ADDRESS OF ATTORNEY:

DEFENDANT IS: NOT DETAINED       DATE OF ARREST: _____

BENCH WARRANT NEEDED:

PROBATION OFFICER:   N/A

NAME AND ADDRESS OF SURETY:   N/A

YOUTH CORRECTIONS ACT APPLICABLE:  NO

PROSECUTION BY:  INDICTMENT

OFFENSE: (Code & Description):   Count 1 – 18 U.S.C. § 1962(d) Conspiracy to violate RICO; Count 2 – 21 U.S.C. § 846 Conspiracy to Possess with Intent to distribute Cocaine

OFFENSE IS A:  FELONY

MAXIMUM SENTENCE: COUNT 1: Up to LIFE imprisonment; up to $250,000 fine;   up to 5 years of supervised release;   $100 special assessment for each count of conviction; COUNT 2: 5-40 year imprisonment; up to $5,000,000 million fine; up to 4 years of supervised release; $100 special assessment for each count of conviction.

PENALTY IS MANDATORY:            Yes _XX_      No _XX_

REMARKS: ___See above_____W D T-Cr-3

SEALED:

UNSEALED:  XX

# UNITED STATES DISTRICT COURT
## WESTERN DISTRICT OF TEXAS
## DEL RIO DIVISION

COUNTY:  UVALDE      **USAO #:2013R22408**  CASE# /JUDGE:

DATE:  OCTOBER 7, 2015 MAG. CT. #:__MATTER__      **DR 15 CR 1211**

AUSA:  RALPH PARADISO

DEFENDANT: ESMEREJILDO BALDERAS, AKA "HILDO"

CITIZENSHIP: UNKNOWN

INTERPRETER NEEDED:__YES__      Language:  SPANISH

DEFENSE ATTORNEY: NOT APPOINTED YET

ADDRESS OF ATTORNEY:

DEFENDANT IS: NOT DETAINED      DATE OF ARREST:  _

BENCH WARRANT NEEDED:

PROBATION OFFICER:   N/A

NAME AND ADDRESS OF SURETY:    N/A

YOUTH CORRECTIONS ACT APPLICABLE:  NO

PROSECUTION BY:  INDICTMENT

OFFENSE: (Code & Description):   Count 1 – 18 U.S.C. § 1962(d) Conspiracy to violate RICO;

Count 2 – 21 U.S.C. § 846 Conspiracy to Possess with Intent to distribute Cocaine

OFFENSE IS A:  FELONY

MAXIMUM SENTENCE: COUNT 1: Up to LIFE imprisonment; up to $250,000 fine;   up to 5

years of supervised release;   $100 special assessment for each count of conviction; COUNT 2:

5-40 year imprisonment; up to $5,000,000 million fine; up to 4 years of supervised release; $100

special assessment for each count of conviction.

PENALTY IS MANDATORY:              Yes _XX_      No _XX_

REMARKS:__See above_____W D T-Cr-3

SEALED:

UNSEALED:  XX

**UNITED STATES DISTRICT COURT**
**WESTERN DISTRICT OF TEXAS**
**DEL RIO DIVISION**

COUNTY:  <u>UVALDE</u>     **USAO #:2013R22408**  CASE# /JUDGE:

DATE:  OCTOBER 7,  2015    MAG. CT. #:  MATTER

AUSA:  RALPH PARADISO

DEFENDANT: GEORGE ANTHONY GARZA, AKA "TONE **DR15CR1211**

CITIZENSHIP: USC

INTERPRETER NEEDED:  YES      Language:  SPANISH

DEFENSE ATTORNEY: NOT APPOINTED YET

ADDRESS OF ATTORNEY:

DEFENDANT IS: NOT DETAINED      DATE OF ARREST:

BENCH WARRANT NEEDED:

PROBATION OFFICER:  N/A

NAME AND ADDRESS OF SURETY:   N/A

YOUTH CORRECTIONS ACT APPLICABLE:  NO

PROSECUTION BY:  INDICTMENT

OFFENSE: (Code & Description):   Count 1 – 18 U.S.C. § 1962(d) Conspiracy to violate RICO;
Count 2 – 21 U.S.C. § 846 Conspiracy to Possess with Intent to distribute Cocaine

OFFENSE IS A:  FELONY

MAXIMUM SENTENCE: COUNT 1: Up to LIFE imprisonment; up to $250,000 fine;  up to 5
years of supervised release;   $100 special assessment for each count of conviction; COUNT 2:
5-40 year imprisonment; up to $5,000,000 million fine; up to 4 years of supervised release; $100
special assessment for each count of conviction.

PENALTY IS MANDATORY:          Yes  XX       No  XX

REMARKS:    See above                          W D T-Cr-3

SEALED:

UNSEALED:  XX

# UNITED STATES DISTRICT COURT
## WESTERN DISTRICT OF TEXAS
## DEL RIO DIVISION

COUNTY:  UNDERLINE UVALDE  **USAO #:2013R22408**  CASE# /JUDGE:

DATE:  OCTOBER 7, 2015 MAG. CT. #:_ MATTER _    **DR 15 CR 1211**

AUSA:  RALPH PARADISO

DEFENDANT: ALFREDO MARTINEZ, AKA "GOOFY"

CITIZENSHIP: UNKNOWN

INTERPRETER NEEDED:_ YES_        Language:  SPANISH

DEFENSE ATTORNEY: NOT APPOINTED YET

ADDRESS OF ATTORNEY:

DEFENDANT IS: NOT DETAINED        DATE OF ARREST: `````    _____

BENCH WARRANT NEEDED:  ___

PROBATION OFFICER:   N/A

NAME AND ADDRESS OF SURETY:    N/A

YOUTH CORRECTIONS ACT APPLICABLE:  NO

PROSECUTION BY:  INDICTMENT

OFFENSE: (Code & Description):   Count 1 – 18 U.S.C. § 1962(d) Conspiracy to violate RICO;

Count 2 – 21 U.S.C. § 846 Conspiracy to Possess with Intent to distribute Cocaine

OFFENSE IS A:  FELONY

MAXIMUM SENTENCE: COUNT 1: Up to LIFE imprisonment; up to $250,000 fine;  up to 5

years of supervised release;   $100 special assessment for each count of conviction; COUNT 2:

5-40 year imprisonment; up to $5,000,000 million fine; up to 4 years of supervised release; $100

special assessment for each count of conviction.

PENALTY IS MANDATORY:           Yes  XX         No  XX

REMARKS:    See above _____ W D T-Cr-3

SEALED:

UNSEALED:  XX

# UNITED STATES DISTRICT COURT
# WESTERN DISTRICT OF TEXAS
# DEL RIO DIVISION

COUNTY:  UVALDE     **USAO #:2013R22408**   CASE# /JUDGE:

DATE:  OCTOBER 7, 2015 MAG. CT. #:_MATTER___   **DR15CR1211**

AUSA:  RALPH PARADISO

DEFENDANT: GONZALO NANDIN, AKA "TOO SHORT"

CITIZENSHIP: USC

INTERPRETER NEEDED:___YES___     Language:  SPANISH

DEFENSE ATTORNEY: NOT APPOINTED YET

ADDRESS OF ATTORNEY:

DEFENDANT IS: NOT DETAINED      DATE OF ARREST:_____  _____

BENCH WARRANT NEEDED:

PROBATION OFFICER:   N/A

NAME AND ADDRESS OF SURETY:    N/A

YOUTH CORRECTIONS ACT APPLICABLE:  NO

PROSECUTION BY:  INDICTMENT

OFFENSE: (Code & Description):   Count 1 – 18 U.S.C. § 1962(d) Conspiracy to violate RICO

OFFENSE IS A:  FELONY

MAXIMUM SENTENCE: COUNTS 1: Up to LIFE imprisonment; up to $250,000 fine;   up to 5 years of supervised release;   $100 special assessment for each count of conviction

PENALTY IS MANDATORY:          Yes  XX         No  XX

REMARKS:    See above_____W D T-Cr-3

SEALED:

UNSEALED:  XX

**UNITED STATES DISTRICT COURT**
**WESTERN DISTRICT OF TEXAS**
**DEL RIO DIVISION**

COUNTY:  UVALDE        **USAO #:2013R22408**   CASE# /JUDGE:

DATE:  OCTOBER 7, 2015 MAG. CT. #:   MATTER

AUSA:  RALPH PARADISO        **DR 15 CR 1211**

DEFENDANT: MANUEL ROSARIO-PEREZ, AKA "YAYO"

CITIZENSHIP: USC

INTERPRETER NEEDED:   YES        Language:  SPANISH

DEFENSE ATTORNEY: NOT APPOINTED YET

ADDRESS OF ATTORNEY:

DEFENDANT IS: NOT DETAINED        DATE OF ARREST: `

BENCH WARRANT NEEDED:

PROBATION OFFICER:   N/A

NAME AND ADDRESS OF SURETY:    N/A

YOUTH CORRECTIONS ACT APPLICABLE:  NO

PROSECUTION BY:  INDICTMENT

OFFENSE: (Code & Description):   Count 1 – 18 U.S.C. § 1962(d) Conspiracy to violate RICO

OFFENSE IS A:  FELONY

MAXIMUM SENTENCE: COUNTS 1: Up to LIFE imprisonment; up to $250,000 fine;   up to 5
years of supervised release;   $100 special assessment for each count of conviction

PENALTY IS MANDATORY:        Yes  XX        No  XX

REMARKS:    See above _____W D T-Cr-3